Andrew M. Calamari
Sanjay Wadhwa
Adam Grace
Richard G. Primoff
Kristine M. Zaleskas
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281
(212) 336-0148(Primoff)
Email:  PrimoffR@sec.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------- x
                                                         :
**SECURITIES AND EXCHANGE**                              :
**COMMISSION,**                                          :
                                                         :
                                    **Plaintiff,**       :        **16 Civ. _____**
                                                         :
                          **- against -**                :        **ECF CASE**
                                                         :
**GAVIN CAMPION,**                                       :
                                                         :
                                    **Defendant.**       :
                                                         :
                                                         :
-------------------------------------------------------- x

## COMPLAINT

Plaintiff Securities and Exchange Commission (the "Commission"), for its complaint against defendant Gavin Campion ("Campion" or "Defendant"), alleges:

## SUMMARY OF ALLEGATIONS

1.      This action involves a scheme by Defendant and other top executives of KIT Digital, Inc. (the "Company" or "KIT Digital") to defraud the Company's investors and auditors by materially misstating KIT Digital's financial statements and making other false or misleading public disclosures and engaging in accounting transactions that violated Generally Accepted

Accounting Principles in the United States ("U.S. GAAP").  From approximately late 2010 to late 2011, Defendant – along with Kaleil Isaza Tuzman ("Isaza Tuzman"), the then-chief executive officer of KIT Digital, and Robin Smyth ("Smyth"), the then-chief financial officer of KIT Digital – knowingly or recklessly caused KIT Digital to recognize more than $25 million in fictitious revenue from at least a dozen sham license agreements that were concocted solely for purposes of inflating KIT Digital's publicly reported financial results.

2.      As a result of Defendant's fraudulent conduct, from approximately 2010 to mid-2012, KIT Digital filed with the Commission false and misleading Forms 10-Q, 10-K, and 8-K, and attendant financial statements, materially overstating revenue, goodwill, and cash equivalents and materially understating the Company's true losses by millions of dollars.

**VIOLATIONS**

3.      By engaging in the conduct set forth in this Complaint, Defendant:

a.      Violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Sections 10(b) and 13(b)(5) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. §§ 78j(b) and 78m(b)(5)] and Rules 10b-5 and 13b2-1 thereunder [17 C.F.R. §§ 240.10b-5 and 240.13b2-1]; and

b.      Aided and abetted violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Sections 10(b) 13(a), 13(b)(2)(A), and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A) and 78m(b)(2)(B)] and Rules 10b-5, 12b-20, 13a-1, 13a-11, and 13a-13 thereunder [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

2

## NATURE OF THE PROCEEDINGS AND THE RELIEF SOUGHT

4.      The Commission brings this action pursuant to the authority conferred upon it by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)] and Sections 21(d)(1) and 21(d)(5) of the Exchange Act [15 U.S.C. §§ 78u(d)(1) and 78u(d)(5)].

5.      The Commission seeks a final judgment:  (a) restraining and permanently enjoining Defendant from engaging in the acts, practices and courses of business alleged against him herein and from committing future violations of the above provisions of the federal securities laws; (b) ordering Defendant to disgorge any ill-gotten gains he received and to pay prejudgment interest thereon; (c) ordering Defendant to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]; (d) barring Defendant from serving as an officer or director of a public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)]; and (e) ordering such other and further relief as the Court may deem just and proper.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to Sections 20(b), 20(d), 22(a), and 22(c) of the Securities Act [15 U.S.C. §§ 77t(b), 77t(d), 77v(a), and 77v(c)], Sections 21(d) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d) and 78aa], and 28 U.S.C. § 1331.

7.      Venue lies in the Southern District of New York pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the transactions, acts, practices, and courses of business constituting the violations alleged herein occurred within the Southern District of New York; for instance, at all relevant

times, KIT Digital had its principal executive offices in New York City, its stock was either quoted on the New York–based OTC Bulletin Board or listed on the NASDAQ stock exchange, KIT Digital's registered public accounting firm was located in New York City, a number of KIT Digital's shareholders were located in New York City, and KIT Digital's false and misleading public filings were transmitted to the Commission from New York City.

8.      In connection with the transactions, acts, practices, and courses of business alleged in this Complaint, Defendant directly or indirectly has made use of the means and instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange.

## DEFENDANT

9.      **Campion**, age 44, was the president of KIT Digital from April 2008 through May 2012, and former president of KIT Digital's corporate predecessor, ROO Media.  Campion is an Australian and United Kingdom national who resides in Australia.

## RELATED ENTITY AND INDIVIDUALS

10.     **KIT Digital** was a public Delaware corporation with its principal executive offices in New York City and other places of business in Dubai, United Arab Emirates, and Prague, Czech Republic.  From May 2008 to approximately August 2009, KIT Digital's shares were quoted on the OTC Bulletin Board.  From August 2009, the Company's shares were listed on the NASDAQ Stock Market under the symbol "KITD."  Between 2009 and late 2011, the Company made several public offerings of stock, including offerings in August 2009, January 2010, April 2010, November 2010, and September 2011.  The Company's shares were delisted from NASDAQ in late 2012.  As a public company, KIT Digital had hired an independent registered public accounting firm to conduct annual audits and periodic reviews.

11.     **Isaza Tuzman**, age 44, was the chief executive officer of KIT Digital from early 2008 through his termination in March 2012.

12.     **Smyth**, age 62, was KIT Digital's chief financial officer from 2003 (beginning at KIT Digital's predecessor, ROO Group) until mid-2012, with the exception of a brief period from April to September 2009.  In addition, during the relevant period, Smyth also served as KIT Digital's principal accounting officer (with the exception of the same brief period).

13.     Smyth and Tuzman are named defendants in a related case in the United States District Court for the Southern District of New York, entitled  *SEC v. Kaleil Isaza Tuzman and Robin Smyth*, 15 Civ. 07057 (AJN).

## FACTS

### I.     BACKGROUND

14.     KIT Digital was a public company that purported to sell software and services to assist video content providers in making their content accessible to viewers on the Internet and via internet-enabled television.  As a public company, KIT Digital had hired an independent registered public accounting firm to conduct annual audits and periodic reviews.

15.     Defendant, along with Isaza Tuzman and Smyth, constituted the senior management of the Company, and they operated as a tight-knit group, candidly discussed the Company's financial condition among themselves, and engaged in fraudulent transactions and improper accounting to falsely convey to the Company's auditors and investors that the Company was experiencing far-better financial performance than it really was.  They did so to fraudulently prop up the stock price of the Company and make it appear that it was performing consistent with stock market analysts' expectations.

**II.     DEFENDANT ENGAGED IN SCHEME TO INFLATE
         REPORTED REVENUE THROUGH SHAM LICENSES**

16.     Beginning no later than December 2010 and continuing at least to December 2011, Defendant, working with Isaza Tuzman and Smyth, contrived a series of sham "perpetual" license agreements, which they used to record more than $25 million in phony revenue, in order to meet analysts' expectations, generate false and misleading financial statements for public dissemination through KIT Digital's Forms 10-K and 10-Q during this period, and prop up the price and volume of KIT Digital stock.

17.     The sham licenses consisted of at least a dozen purported agreements:  (i) three sham license agreements with total license fees of $7.5 million in the fourth quarter of 2010, with Licensee A, Licensee B and Licensee C; (ii) two sham license agreements with total license fees of $4 million in the first quarter of 2011, with Licensee D and Licensee E; (iii) two sham license agreements with total license fees of approximately $4.5 million in the third quarter of 2011 with Licensee F and Licensee G, which Defendant signed on behalf of KIT Digital; and (iv) five sham license agreements with total license fees of approximately $9.9 million in the fourth quarter of 2011, with Licensee H, Licensee I, Licensee J, Licensee K and Licensee L, which Defendant also signed on behalf of KIT Digital.

18.     Through this scheme, Defendant knowingly or recklessly contrived to materially misstate KIT Digital's publicly reported financial statements, inflating its reported revenue:  (1) by at least $7.5 million, or 24.25% for the fourth quarter 2010 and 7.57% for the year ended December 31, 2010, as reported in its Form 10-K filed for the year ended December 31, 2010; (2) by at least $4 million, or 13.14%, in its Form 10-Q for the quarter ended March 31, 2011; (3) by at least $4.5 million, or 7.7%, in its Form 10-Q for the quarter ended September 30, 2011; and (4) by at least $9.9 million, or 16.50%, for the quarter ended December 31, 2011, and by at least

$18.4 million, or 9.34%, for the year ended December 31, 2011 as reported in its Form 10-K for the year ended December 31, 2011.

19.     Through this misconduct, Defendant, in concert with Isaza Tuzman and Smyth, also knowingly or recklessly contrived to materially misstate KIT Digital's financial statements for purposes of KIT Digital's public offering of 3,200,000 shares of common stock, which was completed on or about September 20, 2011, pursuant to a Form S-3 shelf registration statement that Defendant, Isaza Tuzman and Smyth signed, and became effective in October 2010, and a prospectus supplement dated September 15, 2011. The September 15, 2011 prospectus supplement incorporated by reference the fraudulently misstated financial statements in KIT Digital's Form 10-K for the year ended December 31, 2010, and its Form 10-Q ended March 31, 2011.

20.     In addition, through this scheme, Defendant, along with Isaza Tuzman and Smyth, contrived to issue Forms 8-K with materially false and misleading representations as to earnings and revenues on January 25, 2011, May 9, 2011, July 19, 2011, December 30, 2011, January 6, 2012 and March 15, 2012.

21.     KIT Digital's legitimate license agreements with customers typically required periodic fees or payments by customers in exchange for the provision of specified software and services, with the fees or payments recognized by KIT Digital as revenue as software was delivered and services were rendered. Defendant, Isaza Tuzman and Smyth structured these sham licenses, however, as "perpetual" licenses, in which the license was granted in perpetuity in exchange for a single license fee, supposedly payable in installments by the putative licensee. They did so because perpetual software licenses, when legitimate, permit a licensor to recognize as revenue the entire license fee as of the date of the license agreement, even if the agreement

provides that the actual payments may be received after that date, so long as, among other things, the specified product is delivered as of the date of the agreement, the license fee is fixed or determinable, and collection of the fees is probable.

22.     Defendant, along with Isaza Tuzman and Smyth, knew or recklessly disregarded, that the sham licenses described above were not legitimate.  They knew or recklessly disregarded that KIT Digital had not delivered and would not deliver any software or other products pursuant to the agreements.   Indeed, Defendant, along with Isaza Tuzman and Smyth, assured their "licensees" from the outset that they would not be expected or required to pay the licensee fees that the agreements ostensibly required them to make.  The "licensees" cooperated, because they were either entities under the control of a former officer and continuing associate of KIT Digital, or were other entities that went along with Defendant, Isaza Tuzman and Smyth as an accommodation.

23.     Since Defendant, Isaza Tuzman and Smyth knew that the licensees themselves would not be making any payments on these sham licenses, they arranged for a series of "round-trip" movements of cash, in which KIT Digital moved its own cash through off-shore accounts and compliant intermediaries (in order to obscure that the source of the cash was KIT Digital), who then transferred that cash back to KIT Digital.  Those cash transfers were then fraudulently recorded as payments made by their licensees on these sham license agreements.  Smyth orchestrated such payments on behalf of himself, Defendant and Isaza Tuzman throughout 2011. In some cases, these payments were made by having intermediaries transfer the cash from KIT Digital's off-shore account, without recording the reduction in cash from that account, and directing those funds back to KIT Digital, while fraudulently recording their receipt as payments from licensees.

8

24.     In other cases, Defendant, Isaza Tuzman and Smyth took advantage of a number of acquisitions that KIT Digital was undertaking of other companies.  They devised the acquisition agreements to include a cash consideration component, making the cash payments look like part of the purchase price KIT Digital was paying for the acquired companies.  In reality, the cash was diverted back to KIT Digital, using it to record payments received on amounts owed to KIT Digital under the sham license agreements and other things.

25.     On or about May 10, 2011, for example, KIT Digital's attorney in Dubai wired approximately $1 million from KIT Digital's off-shore account to an account in the name of an entity controlled by a former KIT Digital employee, who had emailed Smyth a few days earlier to let him know that he would shortly transfer a total of $1 million to KIT Digital on behalf of the licenses signed by Licensee A and Licensee B.  The same day that the $1 million was wired to the account he controlled, the former employee wired $1 million to a KIT Digital bank account located in Dubai.  This $1 million wire transfer – which originated from KIT Digital in the first place – was then fraudulently recorded in KIT Digital's books, as payments on these two sham license agreements, while the $1 million wire out of the off-shore account was never recorded in KIT Digital's books and records.

26.     Smyth orchestrated a similar "round-trip" in September and October 2011, in which approximately $1.65 million was wired from an escrow account controlled by KIT Digital, and which was then sent back to KIT Digital in the guise of payments of license fees on the sham agreements with Licensee B, Licensee F and Licensee G.

27.     In December 2011, following discussions among themselves, Defendant, Smyth, and Tuzman "round-tripped" approximately $4.39 million of funds that had been ostensibly escrowed as part of the purchase price paid by Kit Digital in connection with its acquisition of a

company called Sezmi Corporation ("Sezmi"), with the money flowing back to KIT Digital, purportedly as payments against some of the outstanding receivables on the sham licensees with Licensee A, Licensee C and Licensee F, identified above.

28.     In an email chain including Defendant, Isaza Tuzman and Smyth dated December 25-26, 2011, for example, Smyth noted the urgency of closing another acquisition deal that KIT Digital had proposed, in order to avoid "reversing approximately $5 million of reported revenue, because "I cannot collect deals written Q4 last year," and the auditors "will be reluctant to allow us to do similar deals if we have a track record of not collecting on past deals."  This was a reference to using sham "acquisition" monies never intended to be paid to the acquired company, and which would, like the Sezmi "escrow" cash, be funneled back to the Company fraudulently as payment on the sham license agreements.

29.     Smyth also noted in this email chain to Defendant and Isaza Tuzman, first that the "earliest" he could "get the money out of Sezmi" was end of the first week of January.  Then, he noted that the "only way to get the money in right spot that [he] sent into escrow last week" was if it left by the "first thing Tuesday morning [December 28]," but he still worried that even if "we could get money out of Sezmi" he could not get it into the right spot in time.

30.     Defendant responded on this email chain, and expressed his agreement with Smyth on the "need to do both" the Sezmi acquisition, and the other acquisition, and described his efforts in finishing the personnel issues, including conversations with a Sezmi officer, to make sure the acquisition closed in time.

31.     Defendant, Smyth and Tuzman each knew of, or recklessly disregarded, the fraudulent "round-trip" payments discussed above at ¶¶ 23-29, and that they were intended to obscure from KIT Digital's auditors and the investing public that these perpetual license

agreements were phony, and were designed to materially inflate the Company's publicly

disseminated financial statements.

### III.    DEFENDANT BENEFITED FROM HIS FRAUDULENT CONDUCT

32.    In 2010 and 2011, Campion was awarded salaries and cash bonuses and

performance-contingent stock.

### IV.    KIT DIGITAL DECLARES BANKRUPTCY

33.    In 2012, KIT Digital's fraud began to come to light.

34.    Defendant resigned from the Company in May, 2012.

35.    After the close of trading on November 21, 2012, KIT Digital filed a Form 8-K

announcing that the Company's audit committee had concluded that, because of errors and

irregularities in the Company's historical financial statements, the Company would restate

financial statements for (i) the years ended December 31, 2009, 2010 and 2011; (ii) each of the

three quarters in 2009, 2010 and 2011; and (iii) the quarters ended March 31, 2012 and June 30,

2012.  The Company further said that "investors should no longer rely upon the Company's

previously issued financial statements for these periods, any earnings releases or other

communications relating to these periods . . . ."

36.    These disclosures had a profound effect on KIT Digital's shareholders.

37.    On November 21, 2012, Kit Digital's stock closed at $2.07 per share.  On

November 23, 2012, the first trading day after the prospective restatement was announced, KIT

Digital's stock opened at $1.00 per share, a nearly 52% drop.  By the end of that day's trading

the stock had moved down to $0.74 cents per share, an additional 26% decrease.

38.    On December 4, 2012, the Listing Qualifications Department of NASDAQ

notified KIT Digital that—because of its inability to file timely a Form 10-Q with the

Commission—the Company was not in compliance with NASDAQ rules and, as a result, KIT

Digital's common stock was subject to being de-listed from NASDAQ.  On December 12, 2012,

NASDAQ halted trading in the Company's common stock.  On January 10, 2013, NASDAQ

delisted KIT Digital's common stock.

39.     KIT Digital filed for bankruptcy protection under Chapter 11 of the U.S.

Bankruptcy Code on or about April 25, 2013.

40.     By failing to ensure that KIT Digital's public filings, financials statements, and

press releases were accurate, as described above, Defendant failed to act as reasonably careful

corporate officers would in similar circumstances.

## FIRST CLAIM FOR RELIEF

### Violations of Section 17(a) of the Securities Act

41.     The Commission re-alleges and incorporates by reference herein each and every

allegation contained in paragraphs 1 through 40 herein.

42.     Defendant, in the offer or sale of securities, knowingly, recklessly, or negligently,

by the use of means or instruments of transportation or communication in interstate commerce or

by the use of the mails, directly or indirectly:

(a)     employed devices, schemes or artifices to defraud;

(b)     obtained money or property by means of untrue statements of material facts, or

omissions to state material facts necessary in order to make the statements made, in light of the

circumstances under which they were made, not misleading; and/or

(c)     engaged in transactions, practices or courses of business which operated or would

operate as a fraud or deceit upon the purchaser.

43.     By engaging in the foregoing conduct, Defendant violated and, unless restrained

and enjoined, will continue violating Securities Act Section 17(a).  [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF

### Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

44.      The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 40 herein.

45.      By engaging in the conduct described above, Defendant knowingly or recklessly, in connection with the purchase or sale of securities, directly or indirectly, by the use of means or instruments of transportation or communication in interstate commerce or by the use of the mails, or the facilities of a national securities exchange:

(a)      employed devices, schemes, or artifices to defraud;

(b)      made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or

(c)      engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person.

46.      By engaging in the foregoing conduct, Defendant violated and, unless restrained and enjoined, will continue violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5] thereunder.

## THIRD CLAIM FOR RELIEF

### Aiding and Abetting Violations of Section 17(a) of the Securities Act and Section 10(b) of the Exchange Act and Rule 10b-5 Thereunder

47.      The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 40 herein.

48.      By engaging in the conduct described above, Defendant knowingly or recklessly, violated Section 17(a) of the Securities Act Section 10(b) of the Exchange Act and Rule 10b-5

thereunder by engaging in the conduct described above, in connection with the purchase or sale

of securities, directly or indirectly, by the use of means or instruments of transportation or

communication in interstate commerce or by the use of the mails, or the facilities of a national

securities exchange:

49.     Defendant knowingly or recklessly provided substantial assistance to in the

commission of the forgoing violations.

50.     By reason of the foregoing, Defendant, singly or in concert, directly or indirectly,

aided and abetted violations of, and unless enjoined, will again aid and abet violations of, Section

17(a) of the Securities Act [15 U.S.C. § 77q(a)], and Section 10(b) of the Exchange Act [15

U.S.C. §78j(b)] and Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5].

## FOURTH CLAIM FOR RELIEF

### Violations of Section 13(b)(5) of the Exchange Act

51.     The Commission re-alleges and incorporates by reference each and every

allegation in paragraphs 1 through 40 herein.

52.     By reason of the conduct alleged above, Defendant knowingly circumvented or

knowingly failed to implement a system of internal accounting controls or knowingly falsified

books, records, and accounts of KIT Digital that were subject to Section 13(b)(2) of the

Exchange Act. [15 U.S.C. §13(b)(2)(A)].

53.     By reason of the foregoing, Defendant violated and, unless restrained and

enjoined, will continue violating Section 13(b)(5) of the Exchange Act [15 U.S.C. § 78m(b)(5)].

## FIFTH CLAIM FOR RELIEF

### Violations of Rule 13b2-1 promulgated under the Exchange Act

54.     The Commission re-alleges and incorporates by reference each and every

allegation in paragraphs 1 through 40 herein.

55.     By reason of the conduct alleged above, Defendant, directly or indirectly, falsified or caused to be falsified, books, records, or accounts described in Section 13(b)(2)(A) of the Exchange Act. [15 U.S.C. §13(b)(2)(A)].

56.     By reason of the foregoing, Defendant violated and, unless restrained and enjoined, will continue violating Rule 13b2-1 promulgated under the Exchange Act. [17 C.F.R. § 240.13b2-1].

## SIXTH CLAIM FOR RELIEF

**Aiding and Abetting Violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act**

57.     The Commission re-alleges and incorporates by reference each and every allegation in paragraphs 1 through 40 herein.

58.     By reason of the conduct alleged above, KIT Digital failed to make and keep books, records, and accounts that, in reasonable detail, accurately and fairly reflected its transactions and disposition of assets.

59.     By reason of the conduct alleged above, KIT Digital failed to devise and maintain a system of internal accounting controls sufficient to provide reasonable assurances that transactions were recorded as necessary to permit preparation of financial statements in conformity with generally accepted accounting principles, or any other applicable criteria, and to maintain accountability for assets.

60.     By reason of the conduct alleged above, KIT Digital violated Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

61.     Defendant knowingly or recklessly provided substantial assistance to KIT Digital

in the commission of these violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

62.     By reason of the foregoing, Defendant aided and abetted, and unless restrained and enjoined will continue aiding and abetting, KIT Digital's violations of Sections 13(b)(2)(A) and 13(b)(2)(B) of the Exchange Act [15 U.S.C. §§ 78m(b)(2)(A) and 78m(b)(2)(B)].

**SEVENTH CLAIM FOR RELIEF**

**Aiding And Abetting Violations of the Reporting Provisions of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13**

63.     The Commission re-alleges and incorporates by reference every allegation contained in paragraphs 1 through 40 herein.

64.     By filing with the Commission materially false and misleading periodic reports, including annual, quarterly, and current reports on Forms 10-K, 10-Q, and 8-K from 2008 through 2012, KIT Digital violated Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

65.     Defendant knowingly or recklessly provided substantial assistance to KIT Digital's reporting violations as set out in the above paragraph.

66.     By reason of the foregoing, Defendant aided and abetted, and unless restrained and enjoined will continue aiding and abetting, KIT Digital's violations of Section 13(a) of the Exchange Act and Rules 12b-20, 13a-1, 13a-11, and 13a-13 [15 U.S.C. § 78m(a) and 17 C.F.R. §§ 240.12b-20, 240.13a-1, 240.13a-11, and 240.13a-13].

# PRAYER FOR RELIEF

WHEREFORE, the Commission respectfully requests that the Court enter a final judgment:

(a)     finding that Defendant violated the securities laws and rules promulgated thereunder as alleged against them herein;

(b)     permanently restraining and enjoining Defendant, his agents, servants, employees and attorneys and all persons in active concert who receive actual notice of the injunction, and each of them from, directly or indirectly, violating or aiding and abetting violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)] and Sections 10(b), 13(a), 13(b)(2)(A), 13(b)(2)(B), and 13(b)(5) of the Exchange Act [15 U.S.C. §§ 78j(b), 78m(a), 78m(b)(2)(A), 78m(b)(2)(B), and 78m(b)(5)] and Rules 10b-5, 12b-20, 13a-1, 13a-11, 13a-13, and 13b2-1 [17 C.F.R. §§ 240.10b-5, 240.12b-20, 240.13a-1, 240.13a-11, 240.13a-13, and 240.13b2-1], promulgated thereunder;

(d)     permanently barring Defendant from acting as an officer or director of any public company pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 77t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)];

(e)     directing Defendant to disgorge all ill-gotten gains plus pre-judgment interest thereon;

(f)     directing Defendant to pay appropriate civil monetary penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)];

(g)   granting such other and further relief as the Court may deem just and proper.

Dated:       November 15, 2016
             New York, New York

SECURITIES AND EXCHANGE COMMISSION

Andrew M. Calamari
Regional Director
Sanjay Wadhwa
Adam S. Grace
Richard G. Primoff
Kristine M. Zaleskas
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0148 (Primoff)
Email: Primoffr@sec.gov